# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ————————————————<br><br>GEORGE T. GILL and<br>SONDRA GILL,<br><br>    Plaintiffs,<br><br>    v.<br><br>JETBLUE AIRWAYS<br>CORPORATION,<br><br>    Defendant.<br>———————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Civil Action No.
10-11454-FDS**

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This is an action against JetBlue Airways for personal injuries sustained by plaintiff George Gill, an incomplete quadriplegic, while boarding an aircraft. The complaint alleges negligence in the accommodation of Mr. Gill's disability during aircraft boarding. Jurisdiction is based on diversity of citizenship.

JetBlue has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). In substance, it contends that plaintiffs' tort claims are preempted by the Airline Deregulation Act of 1978 ("ADA") and the Air Carrier Access Act of 1986 ("ACAA") and that those federal laws provide no private causes of action in place of the state law claims. For the reasons set forth below, the Court concludes that the training requirements under ACAA regulations preempt the common-law standard of care applicable to plaintiffs' claims of negligent training. Otherwise, however, the motion will be denied because the claims are not preempted in any other respect.

I.    **Background**

The facts are stated as alleged by the plaintiffs.

Plaintiffs George and Sondra Gill are residents of Quincy, Massachusetts.  (Compl. ¶¶ 1-2).  Mr. Gill is an incomplete quadriplegic, with some use of his upper extremities but none of his lower extremities.  (*Id.* ¶ 5).  As a result, he uses a wheelchair.  (*Id.*).

Defendant JetBlue Airways, a commercial airline, is a Delaware corporation with a principal office in Forest Hills, New York.  (*Id.* ¶ 3).

At some time prior to February 1, 2009, the Gills purchased from JetBlue two round-trip tickets from Boston Logan Airport to Tampa, Florida.  (*Id.* ¶ 4).  Their flights were scheduled to depart for Florida the morning of February 1, 2009, and to return to Massachusetts on February 12, 2009.  (*Id.*).

On the morning of February 1, Mr. Gill was using his ordinary wheelchair at the airport prior to his and his wife's flight.  (*Id.* ¶¶ 6–7).  Upon arrival at the boarding gate, the Gills requested permission to begin boarding early to allow for the extra time Mr. Gill required.  (*Id.* ¶¶ 5–6).  Their request was granted, and two JetBlue employees helped Mr. Gill down the jetway toward the aircraft.  (*Id.* ¶ 7).

In order for Mr. Gill to board the aircraft, it was necessary to transfer him to a narrower "aisle/boarding" wheelchair at the end of the jetway.  (*Id.* ¶ 7).  To begin this transfer process, one of the JetBlue employees aligned Mr. Gill's wheelchair next to the aisle/boarding wheelchair.  (*Id.* ¶ 8).  The employee then removed the right armrest of Mr. Gill's wheelchair.  (*Id.*).  On the aisle/boarding wheelchair, the left armrest was set in its "up" position, which would enable Mr. Gill to slide onto it from his wheelchair, and the right armrest was in the

"down" position.  (*Id.*).  Mr. Gill was therefore able to slide from his wheelchair onto the aisle/boarding wheelchair from the left side.  (*Id.*).

Once Mr. Gill was on the aisle/boarding wheelchair, however, the JetBlue employees were unable to bring down the left armrest.  (*Id.*).  When he offered to adjust his position in the chair to facilitate lowering the armrest, the employees responded that it was unnecessary to bring it down.  (*Id.*).  Mr. Gill contends that he insisted that he preferred having the armrest lowered prior to boarding, but was ignored.  (*Id.*).  As the employees continued preparing the chair for boarding, Mr. Gill began to slip off the left side of the wheelchair.  (*Id.*).  The employees were unable to prevent Mr. Gill from falling off the side of the chair.  (*Id.*).  Emergency medical technicians were called, although it does not appear that medical assistance was provided at this point.  (*Id.*).  Ultimately, a group of men helped Mr. Gill back onto the aisle/boarding wheelchair and onto the plane.  (*Id.*).

Upon his arrival in Tampa, Mr. Gill was taken by ambulance to a hospital, where x-rays revealed a comminuted fracture of the left femur.  (*Id.* ¶ 9).  He was eventually discharged on February 12, 2009.  (*Id.*).  Mr. Gill then returned to Boston, where he was admitted to the West Roxbury VA Hospital.  (*Id.* ¶ 10).  Two surgeries were eventually performed on Mr. Gill's leg, each accompanied by a substantial period of inpatient care.  (*Id.* ¶¶ 10–11).

On July 6, 2010, Mr. and Mrs. Gill filed this action against JetBlue in the Massachusetts Superior Court.  The complaint alleges negligence on the part of the two JetBlue employees while they assisted Mr. Gill with boarding as well as negligent supervision on the part of JetBlue for failure to properly train its employees.  JetBlue removed the case to this Court on the basis of diversity jurisdiction.  JetBlue has now moved for judgment on the pleadings under Fed. R. Civ.

P. 12(c).

## II.    Standard of Review

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte–Torres v. University of Puerto Rico*, 445 F.3d 50, 54–55 (1st Cir. 2006). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a defendant's motion for judgment on the pleadings, a plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendants' motion for judgment on the pleadings if plaintiffs' well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

**III.    Analysis**

**A.      Preemption Principles**

It is a "fundamental principle of the Constitution" that the Supremacy Clause gives Congress the power to preempt state law. *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000); *see* U.S. CONST. art. VI, cl. 2. Preemption of state law by a statute enacted by Congress may take three forms: express preemption, conflict preemption, and field preemption. Express preemption requires "language in the federal statute that reveals an explicit congressional intent to pre-empt state law." *Barnett Bank of Marion Cnty, N.A. v. Nelson*, 517 U.S. 25, 31 (1996). In the absence of an express statutory preemption clause, conflict preemption may be implied "where it is impossible for a private party to comply with both state and federal requirements." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Field preemption occurs when Congress creates a regulatory scheme so pervasive in a particular subject area as to demonstrate that it "intends federal law to occupy the field." *Crosby*, 530 U.S. at 372 (internal citations omitted).

In all forms, preemption turns on congressional intent. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("The purpose of Congress is the ultimate touchstone of pre-emption analysis.") (internal quotations marks omitted). The court must therefore begin, "as in any exercise of statutory construction[,] with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *New York St. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). However, because "Congress does not cavalierly pre-empt state-law causes of action," it is presumed "that the historic police powers of the States were not to be superseded by the Federal Act unless that was

5

the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

### B.        The Airline Deregulation Act

JetBlue contends that the Airline Deregulation Act expressly preempts plaintiffs' state-law tort claims.  The ADA, which amended the Federal Aviation Act of 1958 ("FAA"), includes a preemption clause that prohibits any state from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).[1]  According to the Supreme Court, Congress enacted this provision "to ensure that the States would not undo federal deregulation with regulation of their own."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992).  The Court has therefore held that the words "related to," as used in this clause, "express a broad preemptive purpose" and encompass all state laws "having a connection with or reference to" airline prices, routes, or services, even if those laws do not directly regulate those activities.  *Id.*, 504 U.S. at 383; *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 219 (1995).  Under this standard, enforcement of state laws against airlines on the basis of how particular services are provided is preempted unless it affects those services in "too tenuous, remote, or peripheral a manner" to warrant preemption.  *Morales*, 504 U.S. at 390.

Here, JetBlue argues that the ADA preempts state-law tort claims arising from its employees' attempt to accommodate a passenger's disability during boarding.  To analyze the applicability of the statute's preemption clause to this claim, the Court must therefore determine (1) whether assistance given to disabled passengers during boarding is a "service" within the

---

[1] Originally codified at 49 U.S.C. § 1305(a)(1), this preemption clause was incorporated, with inconsequential amendments, into the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 41713(b).

meaning of the ADA and (2) whether state negligence law, applied to personal injuries incurred during the course of this assistance, is sufficiently "related to" that service to warrant preemption.

The first issue is complicated by the fact that the ADA does not define "service" as used in the preemption clause. Neither the Supreme Court nor the First Circuit has addressed the scope of activities encompassed by the term. Absent direct authority, this Court considers the decisions of other courts for guidance.

The Courts of Appeals that have addressed this issue "have taken directly conflicting positions" regarding the meaning of "service" under 49 U.S.C. § 41713(b)(1). *DeTerra v. America West Airlines, Inc.*, 226 F. Supp. 2d 274, 277 (D. Mass. 2002). *See also Northwest Airlines, Inc. v. Duncan*, 531 U.S. 1058 (2000) (O'Connor, J., dissenting) (identifying circuit split in dissent from denial of petition for certiorari). The Ninth Circuit has adopted a narrow construction of the term. In *Charas v. Trans World Airlines, Inc.*, the court held that the term "service" under the statute included "prices, schedules, origins and destinations of the point-to-point transportation passengers, cargo, or mail," but not "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." 160 F.3d 1259, 1261 (9th Cir. 1998) (*en banc*); *see also Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, 1114–15 (9th Cir. 2000), *cert. denied*, 531 U.S. 1058 (2000).

Several other circuits, however, have adopted a broader construction of "service" that includes the full range of activities performed by airline employees for the benefit of passengers. In *Hodges v. Delta Airlines*, the Fifth Circuit held that because the term "'services' generally represent[s] a bargained-for or anticipated provision of labor from one party to another," the

term, as used in the ADA, includes "items such as ticketing, boarding procedures, provision of

food and drink, and baggage handling, in addition to the transportation itself."  44 F.3d 334, 336

(5th Cir. 1995) (*en banc*).  The Seventh and Eleventh Circuits have adopted this definition.

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996);

*Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1256–57 (11th Cir. 2003).  The Second Circuit,

while stopping short of endorsing the *Hodges* rule, has similarly rejected a definition as narrow

as that endorsed in *Charas*.  *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d

Cir. 2008) (holding that the provision of amenities during a lengthy ground stay was a "service"

under § 41713(b)(1)).  In *Smith v. Comair, Inc.*, the Fourth Circuit agreed that "boarding

procedures are a service rendered by an airline."  134 F.3d 254, 259 (4th Cir. 1998).

        District Courts within the First Circuit have generally adopted the *Hodges* approach,

holding that "service" includes activities peripheral to point-to-point transportation itself.  *See*

*Chukwu v. Board of Dir. British Airways*, 889 F. Supp. 12, 13 (D. Mass. 1995), *aff'd mem.*, 101

F.3d 106 (1st Cir. 1996); *DeTerra*, 226 F. Supp. 2d at 277; *Seymour v. Continental Airlines, Inc.*,

2010 WL 3894027 (D.R.I. 2010).  Even those courts that have found particular activities to be

outside the scope of "services" contemplated by the statute have done so through reasoning that

is consistent with the *Hodges* standard.  *See* *Somes v. United Airlines, Inc.*, 33 F. Supp. 78,

82–83 (D. Mass. 1999) (holding that the in-flight provision of medical equipment is not a

"service" because it is not a "bargained-for or anticipated" element of air travel); *Stone v.

Frontier Airlines, Inc.*, 256 F. Supp. 28, 39 (D. Mass. 2002) (same).

        In light of this trend, this Court will follow *Hodges*, the majority of circuit precedent, and

its sister courts and adopt a broad definition of "service" as it is used in the ADA preemption

clause. Under that definition, the term "service" encompasses boarding procedures and assistance.

Nonetheless, the structure of the statute requires one notable exception to this broad definition of "service." Apart from its preemption clause, the ADA also requires that airlines obtain insurance policies "for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." 49 U.S.C. § 41112(a). Such insurance policies would be unnecessary if state-law tort claims arising from aircraft operations were entirely preempted under 49 U.S.C. § 41713(b)(1). It is therefore necessary to exclude aircraft operation itself from the definition of "service" covered by the preemption clause. Indeed, the distinction between "service" and "operation" was the basis of the court's finding in *Hodges* that the ADA did not preempt state-law personal-injury claims arising from hazardous conditions onboard aircraft and boarding facilities. *Hodge*s, 44 F.3d at 338–39 (maintenance of overhead luggage bins so as to prevent falling baggage is a matter of "operations," not "service," and so not preempted); *see also Dudley*, 882 F. Supp at 207–08 (holding that hazardous conditions at the aircraft entrance resulting in a head injury concerned operational safety, a matter outside the scope of airline "services" and that "'services' is not coextensive with airline 'safety'"); *Jimenez–Ruiz v. Spirit Airlines, Inc.*, 2011 WL 2460873 at *4 (D.P.R. 2011) (holding that slip-and-fall claims arising from a defect in a disembarkment staircase were not preempted because they "did not arise out of the negligent performance of . . . 'services'"). This Court similarly concludes that the term "service," as used in 49 U.S.C. § 41713(b)(1), encompasses all bargained-for or anticipated elements of air travel provided by air carriers except for those related to aircraft operation and maintenance.

In this case, plaintiffs' claims clearly arose during the performance of an airline "service" so defined.  The injury they allege occurred in the course of boarding assistance provided by airline employees.  The accommodation of disabilities during boarding, provided by airline personnel, is a bargained-for or anticipated "service" to the passenger and not a matter of aircraft operation or maintenance.  *See Chukwu*, 889 F. Supp. at 13 (holding that "services" under the statute include all "services provided by individual airline employees directly to passengers, such as ticketing, boarding, in-flight service, and the like").  *Accord Stagl v. Delta Air Lines, Inc.*, 849 F. Supp. 179 (E.D.N.Y. 1994); *Stewart v. American Airlines, Inc.*, 776 F. Supp. 1194, 1197 (S.D. Tex.1991).  *Cf. Hodges*, 44 F.3d at 336; *Jimenez–Ruiz*, 2011 WL 2460873, at *4; *Dudley*, 882 F. Supp. at 206.  Thus, plaintiffs' claims arose from JetBlue employees' allegedly negligent performance of an airline "service" within the meaning of the preemption clause of the ADA.[2]

That does not, however, end the analysis.  As noted, the ADA does not preempt *all* claims arising from an airline service, but only those arising under state laws that are "related to" that service.  Thus, the Court must proceed to the second step of the preemption analysis and determine whether the common law of negligence, under which plaintiffs' personal injury claim is brought, is "related to" the boarding assistance service that gave rise to the allegedly negligent acts.  *See* 49 U.S.C. § 41713(b)(1).

The Supreme Court has had several occasions to address under what circumstances state

---

[2] JetBlue relies, in part, on the definition of "service" under ACAA regulations as evidence of what "service" means in the ADA preemption clause.  *See* 55 Fed. Reg. 8046 (Mar. 6, 1990).  However, that regulatory definition is relevant, at most, to the question of field preemption.  The scope of "service" covered by the ACAA cannot cast light on the scope of the ADA's express preemption clause, because the scope of the ADA clause is informed by the range of subject-matter that was deregulated by the ADA, not by the range of aviation activities currently subject to federal regulation.  *See Morales*, 504 U.S. at 378 ("To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision"); *Taj Mahal*, 164 F.3d at 191 ("To ensure that the states would not *re*-regulate what Congress had decided to *de*[-]regulate, the Act incorporated a preemption provision").

laws of general applicability may be "related to" airline service and therefore preempted by the ADA. In *Morales*, the Court rejected the argument "that only state laws specifically addressed to the airline industry are pre-empted whereas the ADA imposes no constraints on laws of general applicability." 504 U.S. at 386. Such a reading, the Court reasoned, would create an "utterly irrational loophole" and would ignore the "sweep of the 'relating to' language." *Id.* Thus, the Court held, the application of states' consumer-protection laws to airline-fare advertising was preempted by 49 U.S.C. § 41713(b)(1) as a state law "related to" airline prices, routes, or services. *Id.* Likewise, in *Wolens*, the Court held that the ADA preempted claims against an airline alleging that certain practices regarding the airline's frequent-flier program violated the Illinois Consumer Fraud Act. 513 U.S. at 227. Both *Morales* and *Wolens* embody the principle that general state laws will be preempted by the ADA if, as applied to the airline industry, they create a "forbidden significant effect" on airline prices, routes, or services. *Morales*, 504 U.S. at 388. Put otherwise, for a claim to be preempted, it is necessary that the underlying state law have some "connection with or reference to" airline services. *Id.* at 384. A claim is not preempted, even if it arises in the course of airline services, if the state law under which it is brought affects the airline industry in "too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Id.* at 390.

This principle—that the ADA may preempt state laws of general applicability—has been extended to certain common-law tort actions as well. However, courts have reached varying conclusions as to whether particular causes of action are sufficiently "related to" particular airline services to fall under the preemption clause. *Compare Chukwu*, 889 F. Supp. at 14 (finding that specific claims for defamation and intentional infliction of emotional distress

("IIED") "related to" airline "services"); *Pearson v. Lake Forest Country Day Sch.*, 262 Ill. App.

3d 228, 235–37 (1994) (same); *Smith*, 134 F.3d at 259 (finding that claims for false

imprisonment "related to" airline "services"); *Seymour*, 2010 WL 3894027, at \*9 (finding that

IIED claim "related to" airline services); *DeTerra*, 226 F. Supp.2d at 277 (same); *Cannava*, 1993

WL 565341, at \*6 (same) *with Taj Mahal*, 164 F.3d at 195 (finding that defamation claims not

"related to" an airline "service."); *Pittman v. Grayson*, 869 F. Supp. 1065, 1073–74 (S.D.N.Y.

1994) (finding that action for IIED and false imprisonment not "related to" airline services, at

least evaluated from the "standpoint of its impact on the economic competitiveness of airlines");

*Travel All Over*, 73 F.3d at 1433 (finding that defamation claim not "related" but IIED claim

"related").  This discrepancy in case-specific results reflects the understanding that "*Morales*

does not permit [courts] to develop broad rules concerning whether certain types of common-law

claims are preempted by the ADA.  Instead, we must examine the underlying facts of each case

to determine whether the particular claims at issue 'relate to' airline rates, routes or services."

*Travel All Over*, 73 F.3d at 1433.

Nonetheless, in cases involving personal injury, courts have generally held that

negligence claims were not preempted by the ADA on the grounds that the enforcement of tort

remedies is not sufficiently "related to" airline services.  *Hodges,* 44 F.3d at 339*; Taj Mahal*, 164

F.3d at 195; *Stone*, 256 F. Supp. 2d at 40; *Somes*, 33 F. Supp. at 84; *Dudley*, 882 F. Supp at

206–07; *Margolis v. United Airlines, Inc.*, 811 F. Supp. 318, 324–25 (E.D. Mich. 1993).  The

*Hodge*s court, in holding that negligence claims were not preempted, explained that

"[e]nforcement of such tort duties normally will not have 'the forbidden significant effect' on

airlines' services" warned of in *Morales*.  44 F.3d at 339.  The same court also noted that "[i]t is

difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Id.* at 338 (quoting *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 251 (1984)).[3] One district court has explicitly recognized a "majority rule that negligence claims predicated on state law are not preempted by the ADA." *Kelley v. United Airlines, Inc.*, 986 F. Supp. 684, 685 (D. Mass. 1997).

A general rule against ADA preemption of personal injury claims sounding in negligence is also consistent with the policy and structure of the statute as a whole. The ADA deregulated aspects of the airline industry previously subject to federal regulation. The statute's preemption clause aimed "to ensure that the states would not *re*-regulate what Congress had decided to *de*[-]regulate." *Taj Mahal*, 164 F.3d at 191. There is little reason to believe that the clause was intended to extend to personal injury actions, which were not the subject of federal regulation in the first place. The ADA's policy of "maximum reliance on competitive market forces" to further "efficiency, innovation, and low prices," *Morales*, 504 U.S. at 378, would not logically require a preemptive effect on claims "based on negligence and the standard of reasonable care [that do] not purport to regulate the services that air carriers provide to their customers in exchange for their fares," *Margolis*, 811 F. Supp. at 321. *See also Hodges*, 4 F.3d at 355 ("state tort laws concerning safety can be enforced consistently with and distinctly from the services that Congress deregulated"); *Sedigh v. Delta Airlines, Inc.*, 850 F. Supp. at 200 (noting that ADA preemption issues should be decided with a focus on "whether or not the specific common law action addresses matters about which the airlines wish or are likely to compete"). Thus, as one

---

[3] JetBlue argues that 49 U.S.C. § 46101(a) allows any person to file an administrative complaint identifying violations of ADA regulations. The existence of this enforcement mechanism, which may result in civil fines but provides no compensatory relief, does not detract from the reasoning of the court in *Hodges*.

district court has observed, the preemption clause is better read to be limited by this purpose and not to provide "an insurance policy for air carriers against their own negligence." *Margolis*, 811 F. Supp. at 324.

The Court accordingly finds that the ADA preemption clause is inapplicable to plaintiffs' claims because state law concerning negligence is not sufficiently "related to" the particular services at issue.  Plaintiffs allege that JetBlue employees breached a standard of care imposed on society as a whole (or, at least, one imposed on all common carriers).  The enforcement of this standard may have incidental impacts on the nature of boarding services provided to disabled passengers by airlines, but there is no reason to believe it will restrain the ability of airlines to compete in providing those services.  This generalized duty of care is therefore unlike the consumer-protection statutes held preempted in *Morales* and *Wolens*, which require courts to play a quasi-regulatory role by adapting statutory standards for trade practices to the particular practices of the airline industry.  Here, even assuming that state negligence law has any "connection with or reference to" airline services at all, it is "too tenuous, remote, or peripheral" to warrant preemption under the preemption clause  of the ADA.

C.      **The Air Carrier Access Act**

Alternatively, JetBlue argues that the Air Carrier Access Act and its implementing regulations implicitly preempt state-law negligence actions arising from disability accommodations on airlines.  *See Barnett*, 517 U.S. at 31 (explaining that under the doctrine of field preemption, "[a] federal statute . . . may create a scheme of federal regulation 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

14

Enacted in 1986 as an amendment to the FAA, the ACAA addresses and prohibits discrimination in air travel on the basis of disability.  *Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 131 (3rd Cir. 2011); *see* Pub. L. No. 99-435 § 2(a), 100 Stat. 1080 (1986).  The ACAA empowered the Department of Transportation ("DOT") to issue regulations "to ensure nondiscriminatory treatment of qualified handicapped individuals consistent with safe carriage of all passengers on air carriers."  *Id.* § 3, 100 Stat. at 1080; *see also* 49 U.S.C. § 41705(a).  These regulations are contained in 14 C.F.R. Part 382.  Violations may be reported by filing a complaint with the DOT.  49 U.S.C. § 41705; 14 C.F.R. §§ 382.151–159.

It is clear that the ACAA and its implementing regulations do, in fact, preempt certain state laws directed at disability discrimination in the provision of air-travel services.  The DOT has described the scheme created by the ACAA as a "detailed, comprehensive, national regulation" that "substantially, if not completely, occupies the field of nondiscrimination on the basis of handicap in air travel."  Nondiscrimination on the Basis of Handicap in Air Travel, Supplementary Information: Legal and Other General Issues, 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990).  Thus, the DOT has concluded, "there is a strong likelihood that state action on matters covered by [its ACAA rules] will be regarded as preempted."  *Id.  See also National Federation of the Blind v. United Airlines, Inc.*, 2011 WL 1544524, at *3 (N.D. Cal. 2011) (finding that this statement by DOT regarding the preemptive effect of its ACAA regulations "offers clear evidence of the DOT's intent to occupy the field").  Courts have accordingly found the ACAA to preempt claims under state anti-discrimination laws as well as negligence rights of action based on airlines' failure to provide access or disability assistance requested by customers.  *See Foley v. JetBlue Airways, Corp.*, 2011 WL 3359730, at *12 (N.D. Cal. 2011) (state anti-discrimination

statutes); *Summers v. Delta Airlines, Inc.*, 2011 WL 1299360, at *6 (N.D. Cal. 2011) (negligence

right of action ); *Russell v. Skywest Airlines*, 2010 WL 2867123, at *5 (N.D. Cal. 2010) (same);

*Johnson v. Northwest Airlines, Inc.*, 2010 WL 5564629, at *5–6 (N.D. Cal. 2010) (same).

Notably, however, these decisions concerned only allegations of discrimination in the form of

deliberate or negligent failures to provide disability assistance; none involved personal-injury

claims based on injuries resulting from assistance being provided in a negligent manner.

Other courts have found that certain sections of the FAA may preempt state-law

substantive standards of care in the context of some personal-injury negligence actions.  These

holdings, however, have been limited to claims for injuries suffered as a result of aircraft

operational hazards.  For example, in *Abdullah v. American Airlines*, the Third Circuit

considered negligence claims arising from injuries resulting from severe in-flight turbulence.

181 F.3d 363 (3rd Cir. 1999).  The court found that FAA regulations, which prohibit the

operation of an aircraft "in a careless or reckless manner," 14 C.F.R. § 91.13, preempted the

state-law negligence standard, indeed holding that the Act preempted "the entire field of aviation

safety."  *Id.* at 365.  Nonetheless, the court remanded the case to the district court to allow

damages claims to be asserted under the federal standard.  The court cited *Silkwood*, 464 U.S.

238, for the principle that preemption of a substantive standard need not imply preemption of a

state law remedy, and added that "[n]otwithstanding the argument (indeed the truism) that an

award of hefty compensatory and punitive damages is a method of regulating safety, . . . federal

law does not preempt common law remedies concerning nuclear safety."  *Abdullah*, 181 F.3d at

376 (quoting *Bieneman v. City of Chicago*, 864 F.2d 463, 472 (7th Cir.1988).  The court then

held that federal standards for airline safety replaced the common-law negligence duty of care,

but did not preclude recovery of damages if the federal standard was violated.  This solution followed from the observation that "it is evident in both the savings and the insurance clauses of the FAA that Congress found state damage remedies to be compatible with federal aviation safety standards."  181 F.3d at 375; *see* 49 U.S.C.A. § 40120(c) (savings clause); 49 U.S.C.A. § 41112(a) (insurance clause).  In *Montalvo v. Spirit Airlines*, the Ninth Circuit followed *Abdullah* and adopted its rule that state law may not impose additional substantive standards—specifically, a duty to warn of the risk of developing deep-vein thrombosis from sitting on an aircraft—beyond those established by federal aviation regulations.  508 F.3d 464 (9th Cir. 2007). The holdings of these cases, however, are clearly limited to claims arising from the kinds of in-flight hazards subject to FAA safety regulations.  *See* 14 C.F.R. § 91.13(a) (limiting applicability of FAA safety regulations to "[a]ircraft operations for the purpose of air navigation").  Thus, their holdings do not bear directly on whether the ACAA likewise preempts common-law duties of care concerning the assistance provided to disabled passengers.

In short, although *some* state-law tort claims are barred by field preemption as a result of the ACAA and the FAA, it is equally clear that federal aviation law does not preempt *all* applications of state tort law to the airline industry.  *See, e.g.*, *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) ("we have acknowledged that the FAA does not preempt all state law tort actions"); *Elassaad*, 613 F.3d at 132 (3rd Cir. 2010) ("the ACAA is clearly directed at nondiscrimination, and we are not persuaded that Congress intended the ACAA to preempt any state regulation of the interaction between an air carrier and disabled passengers (or disabled persons in general).").  Thus, it is necessary to analyze JetBlue's preemption claims "by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state

law at issue," *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, 809 (9th

Cir. 2009).  Because plaintiffs allege both negligent provision of boarding assistance and

negligent employee training, this claim-specific approach requires separate examination of each.

### 1.  Negligent Provision of Assistance Claim

The Court will first consider plaintiffs' claim of negligent provision of boarding

assistance.  ACAA regulations establish no specific requirements as to the manner in which such

services must be provided.  At most, those regulations specify the circumstances under which

airlines must (or must not) provide particular forms of accommodations; they do not impose a

standard of care.[4]  Because the ACAA regulations provide no alternative standard of care to that

contained in the state tort law, the claim of negligent provision of assistance is not preempted.

JetBlue relies on the line of cases holding that claims premised on the *failure* to provide

accommodations are preempted by ACAA regulations requiring airlines to provide such

assistance when it is requested.  *See, e.g.*, *Johnson*, 2010 WL 5564629.  This reliance is

misplaced.  As other courts have concluded, claims for failure to assist are distinguishable from

those, such as plaintiffs' claim here, alleging *negligent provision* of assistance.  *See, e.g.*,

*Summers*, 2011 WL 1299360, at *11 (dismissing as preempted claims based on failure to assist,

but preserving claims based on negligent provision); *Brown*, 2011 WL 2746251 (E.D. Wash.

2011).  In *Hodges v. Delta Airlines*, the district court rejected the argument that the ACAA

preempted negligence claims arising from an accident that occurred as an airline employee

---

[4] There regulations include guidance stating that carriers should "[o]ffer assistance only if the passenger appears to need help" (in order to "ensur[e] that services . . . are provided . . . in a respectful and helpful manner"), 70 Fed. Reg. at 41,504; a regulation prohibiting carriers from "[r]equir[ing] an individual with a disability to accept special services . . . not requested by the passenger," 14 C.F.R. § 382.11(a)(2); and regulation requiring carriers to make various accommodation equipment available upon request, *Id.* §§ 382.51, 382.61, 382.91.

wheeled a disabled passenger down an aircraft aisle.  The court explained:

> The ACAA regulations say nothing about how to move a disabled passenger from a plane seat to a wheelchair, how many people must assist the passenger, whether the passenger must be buckled in to the wheelchair, and the like. *See* 14 C.F.R. §§ 382.1 et seq. Because the regulations leave such issues open, federal law cannot possibly preempt all state tort claims in this area.

 2010 WL 546832, at *6 (W.D. Wash. 2010).  The Third Circuit has similarly held that a claim alleging negligent oversight of the disembarkation of a disabled passenger amounted to a claim for negligent provision of assistance and thus was not preempted.  *Elassaad*, 613 F.3d at 132.[5]

JetBlue contends that plaintiffs in fact asserted a claim based on failure to assist, rather than negligent provision of assistance, because the critical focus of the complaint is the employee's failure "to follow Mr. Gill's instructions" and lower an armrest that may have prevented him from falling out of the wheelchair.  (Reply Br. at 10).  However, the essence of plaintiffs' complaint is that the manner in which the employees handled Mr. Gill and his wheelchair breached their duty of care to provide assistance in boarding the aircraft.  The fact that the alleged negligent act was a "failure" to lower the armrest does not render plaintiffs' claim one for failure to provide *any* disability accommodations.  Thus, it is not preempted by the ACAA.

### 2.   Negligent Training Claim

By contrast, the ACAA does preempt plaintiffs' claim premised on negligent training. The regulations under the statute specifically require training of airline employees on the proper

---

[5] The court in *Elassaad* went further, holding that "[a]t most, the ACAA might preempt state nondiscrimination laws as they apply to discrimination by air carriers against disabled passengers."  613 F.3d at 132.  It is not necessary to examine whether ACAA preemption is so limited for purposes of this case, or if, instead, it extends to negligence actions premised on a failure to assist disabled passengers, as the cases cited by JetBlue have held.  For present purposes, it is sufficient to find that ACAA preemption does not extend to negligence claims premised on the negligent performance of boarding-assistance duties.

provision of disability accommodations.  The relevant regulations are contained in 14 C.F.R. §

382.141.  They require carriers to train personnel "to proficiency" in boarding and deplaning

procedures and in awareness and the ability to recognize the specific assistance needs of

individual passengers.  Employees also must be trained in the "proper and safe operation" of all

equipment used to accommodate disabilities.  14 C.F.R. § 382.141(a)(1).  The regulations

describe the training required with sufficient detail to supplant the common-law negligence

standard in this area.  *Cf. Levy v. Continental Airlines, Inc.*, 2007 WL 2844592, at *1 (E.D. Pa.

2007) (holding that the FAA crewmember training requirements concerning the carriage of cargo

in the passenger cabin preempted application of "common law standards, state statutes, and local

ordinances" to such training activities).  Thus, the ACAA preempts state law that would hold

airlines to training obligations different from those explicitly set forth it the ACAA regulations.

In summary, plaintiffs' claims are preempted to the extent that they allege that JetBlue,

while complying with federal regulatory standards regarding training, violated a state-law

standard of care in the manner in which it implemented that training program.  However, the

preemption of that state-law standard does not preclude plaintiffs from seeking a damages

remedy if they can prove that the federal standard was violated.  *See Abdullah*, 181 F.3d at 375

("Federal preemption of the standards of care can coexist with state and territorial tort

remedies.").  This Court is aware of only one decision holding that the ACAA preempts state-

law remedies themselves.  *See Gilstrap*, 2:10–cv–06131–JHN–JCx, at 6–7 (C.D. Cal. Jan. 21,

2011).  The court in *Gilstrap* reached this conclusion under the doctrine of conflict preemption.

It reasoned that because the ACAA provides a scheme for administrative enforcement, allowing

plaintiffs to recover for ACAA violations under state law causes of action would conflict with

the administrative compliance scheme provided by 49 U.S.C. §§ 41705 and 46110.  *Id.* at 6–7.

This Court does not agree with that conclusion.  The ACAA, like other sections of the FAA, provides an administrative mechanism to compel compliance but not to compensate parties injured by a violation.  It is therefore appropriate to hold, as other courts have, that the field preemption analysis applied to the FAA in *Montalvo*, *Martin*, and *Abdullah* applies equally to the ACAA, which is an amendment to the FAA.  *See Johnson*, 2010 WL 5564629, at *5–6; *Summers*, 2011 WL 1299360, at *11.  Thus, the federal standards for employee training as to disability assistance under the ACAA can co-exist with state remedies, just as the federal standards under the FAA coexist with state remedies.  If plaintiffs can prove that JetBlue violated the training requirements provided by 14 C.F.R. § 382.141 and that such violations caused their injuries, they will be entitled to damages.  Plaintiffs may be granted leave to amend the complaint, on a proper motion, to address the correct substantive standard.

### D.    Relief Under Federal Law

Although the ADA and ACAA do not preempt plaintiffs' common-law claims, the Court will address JetBlue's argument that the statutes provide no private right of action in order to clarify that plaintiffs are entitled to state-law remedies only.

In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court held that courts may not recognize implied rights of action unless the text and structure of a statute yield a clear manifestation of congressional intent to create a private right of action.  The First Circuit has held that the consumer protection provisions of the ADA do not create an implied right of action. *Buck v. American Airlines, Inc.*, 476 F.3d 29, 34, 37 (1st Cir. 2007) ("for the purpose of implying private rights of action, the Federal Aviation Act (and, hence, the ADA . . . ) is barren soil.").

21

Although the First Circuit has not directly addressed whether the ACAA contains an implied right of action, a developing consensus among the Courts of Appeals since *Sandoval* holds that it does not. *See Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1269–71 (10th Cir. 2004); *Love v. Delta Air Lines*, 310 F.3d 1347, 1354–60 (11th Cir. 2002); *Lopez v. Jet Blue Airways*, 2011 WL 5988443, at *2 (2d Cir. 2011).[6]  Because the text and structure of the ACAA manifests no congressional intent to create a private right of action in a federal district court, this Court will also hold that it does not.  The statute does not expressly provide a right to sue the air carrier, and that right should not be implied, where the statute provides an administrative enforcement scheme and state-law remedies are available to compensate victims of any noncompliance. Thus, plaintiffs' cause of action in this lawsuit arises solely under state tort law.

## III.   Conclusion

For the foregoing reasons, the motion of defendant for judgment on the pleadings is DENIED in part and GRANTED in part.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: December 14, 2011

---

[6] Prior to *Sandoval*, two circuits had held that the ACAA did imply a private right of action.  *See Shinault v. Am. Airlines, Inc.*, 936 F.2d 796, 801 (5th Cir. 1991); *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 568–69 (8th Cir. 1989).  It is doubtful, at best, whether those holdings remain good law.